UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------

In re

    MORGAN H. LUBECKI,                        05-10416 B

                                                      AMENDED
                  Debtor                                DECISION and OR-
                                                      DER

-----------------------------------------------------

                          Thomas J. Gaffney, Esq.
                          80 West Huron Street
                          Buffalo, New York 14202
                          Trustee

                          Law Office of Ralph C. Lorigo
                          Frank J. Jacobson, Esq., of counsel
                          101 Slade Avenue
                          West Seneca, New York 1424-8009
                          Attorneys for Debtor

Bucki, U.S.B.J.

    The primary issue in the present dispute is whether life insurance proceeds retain their exempt status after the beneficiary commingles those proceeds with other funds on deposit in a bank account.

    Morgan Lubecki is the widow of James Lubecki.  At the time of James's death, Mrs. Lubecki was the beneficiary and owner of a policy of insurance on her husband's life.  Pursuant to the terms of that policy, the insurer paid the sum of $18,227.08 to Morgan, who promptly deposited the proceeds into a money market account at HSBC Bank on October 8, 2004.  Immediately prior to that deposit, her account held a balance of $9.88.  Between October 8, 2004, and January 20, 2005, in addition to the deposit of insurance proceeds, the money market account was augmented by twelve other additions.  Eight of these were deposits of earnings from Mrs. Lubecki's employment, while the

remaining four represented accruals of interest. During this same period of time, Morgan Lubecki made nineteen withdrawals, so that the account held a balance of $8,492.83 on January 20, 2005. On that date, Morgan Lubecki filed a petition for relief under chapter 7 of the Bankruptcy Code.

In schedules filed with her bankruptcy petition, Mrs. Lubecki claimed an exemption for the money market account at HSBC Bank. Having otherwise exhausted her cash exemption, Lubecki relies upon the Insurance Law as the basis to exempt the account from administration. The chapter 7 trustee has filed a timely objection to this claim of exemption.

The New York Insurance Law provides that because Morgan Lubecki was the individual who effected the insurance on the life of her spouse, "the proceeds and avails" of that policy are exempt as against "her own creditors, trustees in bankruptcy and receivers in state and federal courts." N.Y. INS. LAW §3212(b)(2) (McKinney 2000). She asserts that by its reference to "proceeds", the statute extends the benefit of the exemption to the account where she had deposited the insurance distribution. In objecting to the exemption, the trustee argues that upon the deposit into the account at HSBC Bank, the insurance proceeds were commingled with other assets, and that by reason of that commingling, the proceeds lost their exempt character.

As authorized by 11 U.S.C. §522(b), the State of New York has opted to establish its own list of assets that are exempt from bankruptcy distribution. In particular, section 282 of the New York Debtor and Creditor Law states that an individual may exempt from property of the bankruptcy estate "insurance policies and annuity contracts and the proceeds and avails thereof as provided in section three thousand two hundred twelve of the insurance law." Because

state law establishes the debtor's exemption, state law will also define the scope of that exemption.

New York law generally distinguishes between exemptions for particular assets and exemptions for an entitlement to cash or cash equivalents.  As to the former, a disposition of the asset will cause a forfeiture of the exemption.  As to the later, the exemption will follow the cash into any separately identifiable assets whose acquisition is traceable to the originally exempt fund.  In *Yates County National Bank v. Carpenter*, 119 NY 550 (1890), the New York Court of Appeals recognized this difference when it considered the exempt status of real estate that a judgment debtor had purchased with a military pension that was exempt under the then applicable provisions of New York law:

> The general exemption laws of the state provide for the protection of specific articles or classes of property with a view of alleviating the condition of the poor by securing to them the use or consumption of the property exempted; but the present law has departed from the ordinary form of exemption, and, while seeking to accomplish the same object, provides, in terms, for the exemption of money or its equivalent.  It is quite obvious that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning.

119 N.Y. at 554.  Accordingly, the court allowed the debtor to exempt the real estate from execution.  Similarly, New York Insurance Law §3212 recognizes an exemption not for particular policies of insurance, but for their "proceeds and avails."  Thus, with respect to the type of insurance covered by this provision of the Insurance Law, the Second Circuit has held that the exemption protects proceeds after distribution to the policy's beneficiary. *Schwartz v. Holzman*, 69 F.2d 814 (1934).

The trustee does not dispute that the exempt proceeds of life insurance can retain their exempt status after payment to a beneficiary. Rather, he contends that in the present instance, those proceeds lost their exemption when the debtor commingled them with other assets. In opposition, the debtor cites *In re Rundlett*, 142 B.R. 649 (Bankr. S.D.N.Y. 1992), a case that was thereafter affirmed by the District Court in a decision that more specifically considers the issue of commingling. 153 B.R. 126 (S.D.N.Y. 1993). Although I believe that *Rundlett* was incorrectly decided, the outcome of the present dispute will require a more precise analysis than that which the trustee suggests.

In *Rundlett*, the debtor had commingled the exempt proceeds of two insurance policies with the non-exempt proceeds of three other policies. Thereafter, the debtor withdrew considerable sums from the single account into which all of the proceeds had been deposited. Nonetheless, on the day of bankruptcy filing, this account still contained approximately $2.2 million, a sum greater than the value of the originally exempt proceeds but less than the total of non-exempt funds. Objecting to a claim of exemption, Rundlett's chapter 7 trustee contended that the remaining balance should be deemed to derive from the non-exempt property of the bankruptcy estate. Instead, both the bankruptcy and district courts ruled that the trustee's interest arose from the date of bankruptcy filing, and that as of that date, the debtor could assert her exemption with respect to the remaining funds. In reaching this conclusion, the district court provided the following rationale:

> [F]or purposes of this bankruptcy proceeding, Rundlett's exemption was not created until the bankruptcy petition was filed. In bankruptcy, an exemption functions to carve out a certain amount of the debtor's assets and protect them from creditors. No exempt proceeds exist prior to the commencement of bankruptcy proceedings. Thus, contrary to the trustee's contentions, commingling could not have functioned to

> cause the proceeds of the two assigned policies to lose their status as exempt proceeds because such status had not yet been created.

153 B.R. at 134. Respectfully, I disagree with this reasoning. Not being bound by the decision of a District Court in a different district, I reject the holding in *Rundlett* for two reasons. First, the court based its decision upon a faulty premise, namely that no exemption is created until the bankruptcy filing. To the contrary, under New York law, exemptions arise independent of bankruptcy and apply primarily against the claims of judgment creditors. Indeed, the here relevant provision of the Insurance Law creates an exemption that applies not only to the claims of a bankruptcy trustee against the person who effected the insurance, but also "as against his or her own creditors . . . and receivers in state and federal courts." N.Y. INS. LAW §3212(b)(1). Because New York defines exemption rights apart from the event of bankruptcy, the date of bankruptcy will not control either the scope or limits of those rights. My second reason for rejecting the holding in *Rundlett* is that it ignores New York precedents regarding the commingling of exempt assets.

In addition to its holding about the status of proceeds of an exempt asset, the decision in *Yates County National Bank v. Carpenter* established the applicable rule for commingled assets. As a general principle, the Court of Appeals there held that the exemption law protects proceeds, "where the receipts from a pension can be directly traced to the purchase of property, necessary or convenient for the support and maintenance of the pensioner and his family . . . ." 119 NY at 555. Allowing an exemption for Carpenter's real estate, the court nonetheless warned that a different outcome can result when assets are commingled:

> Where such moneys can be clearly identified and are used in the purchase of necessary articles, or are loaned or invested for purposes of increase or safety, in such form as to secure their available use for the

> benefit of the pensioner in time of need, we do not doubt but that they come within the meaning of the statute; but where they have been embarked in trade, commerce, or speculation, *and become mingled with other funds so as to be incapable of identification, or separation, we do not doubt but that the pensioner loses the benefit of the statutory exemption*.

119 N.Y. at 555-56 (emphasis added). More recently, in an opinion by Chief Judge Cardozo, the Court of Appeals confirmed that its decision in *Yates County National Bank v. Carpenter* continues to supply the applicable standard. *Surace v. Danna*, 248 N.Y. 18, 24 (1928).

The commingling of exempt proceeds with non-exempt assets does not preclude a tracing of exempt status to an appropriate portion of the common fund. However, to the extent that such tracing is no longer possible due to an inability to identify or separate the respective assets, the commingling will work to deny the exemption. From the debtor's perspective, the commingling of assets will compel the court to apply a worst case calculation of the amount that assuredly derives from an exempt source.

In the present instance, the disputed account contained a balance of $8,492.83 as of the date of bankruptcy filing. This sum derived from five sources: an initial balance of $9.88; insurance proceeds of $18,227.08; payroll deposits prior to November 21, 2004, in the amount of $380.79; payroll deposits after November 21, 2004, in the amount of $84.75; and interest earnings of $15.83. Thus, sources other than the insurance distribution totaled $491.25. This amount represents the maximum sum that might be traced to a source other than the insurance policy. Accordingly, by reason of the commingling of assets, the account included $491.25 that is incapable of identification to the original insurance distribution. The insurance exemption will attach, however, to the remainder in the amount of $8,001.58.

In determining the amount of the insurance exemption, the above calculation assumed a worst case allocation, in which the account balance on the date of bankruptcy filing would include payroll deposits after November 21, 2004, or in other words, during the sixty days prior to the filing of the debtor's bankruptcy petition. Pursuant to New York Debtor and Creditor Law §282 and C.P.L.R. §5205(d)(2), a debtor may exempt ninety percent of wages earned within sixty days of the date of bankruptcy filing, unless a court determines such part "to be unnecessary for the reasonable requirements of the judgment debtor and his dependents." N.Y. C.P.L.R. §5205(d) (McKinney 1997). Here, in addition to her insurance exemption, Mrs. Lubecki may exempt $76.28, that being 90% of her earnings during the last sixty days before bankruptcy.[1]

A portion of the interest on the account is also traceable to otherwise exempt principal, and is therefore exempt. If the disputed amounts were larger or if the parties had wanted a more precise determination, I would have welcomed the presentation of proof sufficient to allow an allocation of interest as among the sources of funds on deposit during each period of interest accrual. Because the total of interest amounts to only $15.83, however, I will apply a simple rule of convenience that will allocate interest in the same proportion as the otherwise exempt funds bear to the account's principal balance without interest. Here, Mrs. Lubecki may exempt $15.08 of interest, as calculated by multiplying accrued interest of $15.83 by a fraction in which

---

[1] I agree with the decision of my esteemed colleague, the Honorable John C. Ninfo, II, in *In re Coolbaugh*, 250 B.R. 162 (Bankr. W.D.N.Y. 2000), wherein Chief Judge Ninfo established a rule of convenience for the allocation of exempt status for wages commingled with other funds. As in the present instance, *Coolbaugh* essentially imposed a worst case calculation of the exempt portion of the commingled funds, in that withdrawals are deemed to derive first from exempt assets. Because Mrs. Lubecki commingled insurance proceeds with her exempt wages, this court now must also calculate the maximum exemption to be allowed under the Insurance Law. Because the present decision essentially assumes that exempt insurance proceeds provided the source of any withdrawal, the remaining balance must necessarily include any deposit of exempt wages. Thus, *Coolbaugh's* mathematical formula has no application under the present circumstances. Nonetheless, my decision follows the same underlying principle, that a debtor can claim no exemption in commingled funds after an exempt source becomes incapable of identification or separation.

the numerator is $8,077.86 (i.e., the sum of exempt insurance proceeds in the amount of $8,001.58 and exempt wages in the amount of $76.28), and the denominator is $8,477 (i.e., the principal balance of $8,492.83 less interest of $15.83).

Conclusion

Bankruptcy Rule 4003(c) provides that the objecting party must carry the burden of proving that exemptions are not properly claimed.  By a clear preponderance of the evidence, the trustee in the instant case has demonstrated that the debtor commingled insurance proceeds with other funds in an account at HSBC Bank.  Thus, under New York law, the deposited funds will enjoy an exemption only to the extent that they are still capable of identification or separation.  Here, the trustee can show only that $488.46 of the deposit fails to satisfy this requirement for continued exemptibility.  Even as to this sum, an additional $76.28 is exempt as wages earned within sixty days of bankruptcy, and $15.08 represents interest on exempt funds.

On the day of bankruptcy filing, the debtor's account at HSBC Bank held a balance of $8,492.83.  For all of the reasons stated herein, the debtor may exempt $8,092.94.  The trustee's objection is sustained with respect to the remaining sum of $399.89, which he may proceed to administer with the other non-exempt assets of this estate.

So Ordered.

Dated:     Buffalo, New York                          /s/ CARL L. BUCKI
           September 29, 2005                                  U.S.B.J.